Good morning, Your Honors, and may it please the court. In January of 2021, Sergeant Greg Hill put his more than 12 years of experience and training as a deputy sheriff and detective to work, and he secured a warrant allowing him to search Mr. March's person and residence for broad categories of specifically drug trafficking and firearms evidence. Problematically, for purposes of the Fourth Amendment, according to Sergeant Hill's probable cause affidavit, the only person he actually investigated for drug trafficking and firearms possession is an individual named Edwin Goodwin. About eight months prior, in May of 2020, Sergeant Hill tells us in the four corners of the warrant affidavit he got some warrants for Goodwin's residence and found evidence of drug trafficking. For reasons he does not disclose, he doesn't actually disclose anything about his investigation of Mr. Goodwin, Sergeant Hill expected to find guns but did not. We flash forward about six months. There's no detail provided about the intervening investigation of Mr. Goodwin, but Sergeant Hill received some information from somebody referred to as fellow officer that Mr. March, Goodwin's uncle, is storing the guns at Mr. March's house. Excuse me. Mr. Goodwin is storing his guns at his uncle Mr. March's house. We don't know the basis of this source's knowledge. We don't know who it is. We don't know how recently this information developed. We don't know anything about what this fellow officer knows about Mr. March's relationship with his nephew, if Mr. Goodwin has ever visited Mr. March's house or had anything to do with it. But nonetheless, intending to continue work on his investigation. There was a suppression hearing? A suppression hearing? There was a suppression hearing, Your Honor. And Hill testified? Hill did testify. And was cross-examination as to the identity or circumstances of the fellow agency precluded? No, Your Honor. Certainly anyone could have asked about that. He wasn't asked? He was not, Your Honor. But this is a four corners of the warrant issue. So what's really relevant is what he put in his warrant application. The government has not asked any questions, in fact, because it was a warrant. It was the defense's burden and the government really had the burden to cross-examine Sergeant Hill during that suppression hearing and to bring out any evidence of what Sergeant Hill knew but did not include in the warrant affidavit. We really don't know what he knew because that evidence was never disclosed, either in the warrant or at the suppression hearing. Now, did the — tell us about the trash pull. Yes, Your Honor. So after getting this information from fellow officer — now, I do want to clarify, at the same time Sergeant Hill — well, we don't know if it was at the same time. At some point within about eight weeks prior to this trash pull, Sergeant Hill was told that Mr. March is storing Mr. Goodwin's guns, and he's also told we don't even know if it's by the same fellow officer, that Mr. March is, quote, involved with marijuana usage. Again, no information about the source of this information, no information about how this informant is connected to Mr. March, why they would think that, whether Mr. March was using marijuana or involved with marijuana usage in his home versus traveling to Colorado to use it in a legal state, something of that nature. No connection whatsoever. But in those eight-week period after Sergeant Hill receives this information, he does two things. He pulls Mr. March's criminal history, discovers that he was arrested more than 30 years ago for burglary and more than 50 years ago for attempted murder and a concealed weapons offense. We know nothing whether he was convicted of those offenses. What about the trash pull that Chief Judge Smith asked about? I'm coming to that right now, Your Honor. Thank you. So then — You don't want to talk about it. Nope. Is that a problem for you? It is not a problem. In fact, I think that that is the key to the entire case here, Your Honor. I just wanted to build up to how little there was other than the trash pull, if I could. Well, if in the trash pull they find marijuana — In the trash pull, Your Honor, they find two stems, as it turns out, only one of which, but we'll accept it does say in the warrant affidavit that two stems field-tested positive for THC. Now, these two stems, this was two days before the warrant was applied for, as much as eight weeks after Sergeant Hill got this information that Mr. March is supposedly storing nephews for his — or storing drug — firearms for his nephew and involved with marijuana usage. This is a duplex residence. We know no information. Well, I guess Mr. — Sergeant Hill did testify that he did some surveillance during that eight-week period, but we know nothing else about it. Duplex resident, no information as to who lived in the other residence, no information that he ever watched the trash before to see what the normal practice was as to how Mr. March put his trash out. But on a trash pull day, believing that a trash can out on the curb closest to Mr. March's side of the duplex was his, Sergeant Hill conducted the trash pull. Was there more than one trash can at the site? It is a duplex residence. We don't — Each side of the duplex has a separate trash can. We believe that to be the case. Sergeant Hill's testimony at this — on the suppression hearing just basically indicated that he had — he was aware there were two residences. He was pretty confident that this trash can, the way that the residents were situated, did, in fact, belong to Mr. March. So he conducts this single trash pull. Everything in the trash can is loose and unbagged. He admits at the suppression hearing he has no idea how long the contents of that trash can have been there. In amongst this loose trash of an undated age, of unknown contents, unknown who could have had access to that, everybody who had been at Mr. March's residence, perceivably the person in the next duplex. But we find these two stems, a loose piece of paper or something with some indicia that Mr. March lives there, indicia of another person named Sean Poole, which isn't referred to in the warrant affidavit but did come out of the suppression hearing. Based on this, Sergeant Hill obtains a warrant for 13 broad categories of firearm and drug trafficking. Respectfully, Your Honor, as to — His testimony was found credible. Excuse me, sir? He was found reliable and credible. Sergeant Hill was found reliable and credible. But again, the question is, what did he put in the four corners of his affidavit? We do not dispute his testimony at the suppression hearing. We don't dispute the district court's finding that he was credible. But what we don't know is anything about the investigation that Sergeant Hill conducted, any reason why he came to suspect. What's your point about the 13 categories? Are you saying that some of it was okay? I'm not, Your Honor. Actually, I don't think any of it was okay. So you don't think anything was okay. They couldn't search for drugs. They couldn't search for anything. I do not believe they could search for anything here, Your Honor. Because — and it fails good faith exception because it was so deficient on the face. This is the definition. When it comes to descriptions of any criminal activity having to do with Mr. March or his residence, we literally only have two marijuana stems that field-tested positive for THC at a time when anything with a THC content of less than 3 percent is actually not a controlled substance or illegal to possess that qualifies as hemp under Iowa law. So in my opinion, Your Honor, yes, this is a bare-bones affidavit that no reasonable law enforcement officer, and with all respect to the judges that came before, no judicial officer should be able to look at this warrant and think that it tells us anything close to — Who signed this warrant? Judge Traum. It's a Scott County magistrate judge, was the original judge. What did you say about the stems? Do you think they were legal to possess? There were two stems. Sergeant Hill conducted a field test, and one of the stems tested positive for THC. That actually does not tell us anything about whether it was illegal for that stem to be in that trash can or whether the stem itself was illegal. If, in fact, the THC content was less than 3 percent, that stem would qualify as hemp, which is not illegal to possess. You don't have any evidence that it was less than 3 percent? I do not, nor does the government have evidence that it was a warrant. You just have a statement that it was THC. That is correct. I would reserve the remainder of my time for rebuttal unless Your Honor has no further questions right now. Is there anything in the record about whether the issuing magistrate asked questions about the affidavit? Sergeant Hill did testify at the suppression hearing that the magistrate judge swore him, but he did not specify what, if any, questions the magistrate asked him. So we don't know anything further than that the magistrate did swear him. And whose burden was it to show that? I mean, he could have been asked that on cross-exam. He certainly could have been, and that would have been the government's burden to elicit that information because the question right now, Your Honor, is, is the Four Corners within the Four Corners of the affidavit, is that sufficient to establish probable cause? And we submitted absolutely is not. That would be an exception to Four Corners. If there had been an inquiry by the magistrate. It could be, but we would need to know what inquiry the magistrate made, and we have no information about that. Why is that the government's burden? The government is the one that got the warrant, Your Honor. We challenged the warrant. Respectfully, if the government wants that to be included within the Four Corners affidavit, I think it would be the government's responsibility to elicit. I'm surprised at the rigidity of what you call a Four Corners inquiry. I have not, I've had warrant application cases over the years where it hasn't been nearly as strict as what you say we have to apply. I'm not sure I understand what you're referring to as strict in this case, Your Honor. This is a, this is limited to a Four Corners inquiry. Right. The question is that. And therefore, all the evidence at the hearing is irrelevant. And if there's, if there was any discussion with the magistrate, you now say that's the government's burden to show. Even to the extent that information, whoever's burden it was, Your Honor, we have no information that that magistrate asked him any additional questions. What's the Supreme Court case you're relying on, on this Four Corners doctrine? I just haven't looked at that lately. I mean, Your Honor, I think there's a host of law that we could refer to. Primarily, I think the significant question is, for this reviewing court, is did the magistrate judge in reviewing the Four Corners of the affidavit have a substantial basis for concluding that the search would uncover evidence of wrongdoing? Illinois against Gates. Illinois versus Gates, Coolidge. Leon talks about the facial invalidity. Correct, Your Honor. In the war, I think. Now, sometimes the government, as I think you're pointing out, puts on additional evidence that the officer knew, but maybe didn't put in the affidavit to support a showing of good faith. That's correct, Your Honor. And there is case law, of course, that supports the notion, when we're looking at the good faith standard, that officers actually had information that under the pressure of the moment they failed to include, recognizing that, you know, they're often working under the pressures of an investigation, that sometimes we're going to make exceptions when they objectively really did have lots of information. Here, of course, there was no information presented at the suppression hearing that Sergeant Hill had any more information than what he included in that affidavit. The government's position was the affidavit's good enough, and even if it wasn't, at least it was good enough to rely on the magistrate. Yes. And I would say that's not the case, because here, Sergeant Hill had lots of time, and he even waited a week to execute the warrant. So there was ample time to do a better investigation than to stem. Thank you, Ms. Jensen. Mr. Kronk. Good morning, Your Honors. May it please the Court, Ms. Jensen. I'm Cliff Kronk. I'm an assistant United States attorney. I am the prosecutor that handled this case before Magistrate Judge Jackson and then, ultimately, Judge Eminger. I appreciate the opportunity to appear today, and I want to just move quickly to the good faith exception. I don't want to roll over on probable cause. I do think that we've started to talk a little bit about how this hearing progressed. The government took the position before the magistrate judge that we don't need any testimony at all, and that we don't need a Franks hearing because there wasn't enough of the kinds of information presented, that there were factual misstatements or reckless disregard for the truth that would even justify an evidentiary hearing. We asked the magistrate judge to please just rule on the face of the search warrant that it was valid, and our magistrate judge said no. He'd been directed by the district court to hold a hearing, and he was going to hold a hearing. We did, I believe it was the government that called Sergeant Hill, and we resisted any claim that there was misrepresentations in the face of the affidavit. There wasn't a whole lot of questions about who's the fellow agent and whether or not this fact or that fact should have been put in the warrant because we were resisting having any kind of hearing like that at all. And the defense, actually, in the end, the judge concluded, the magistrate judge concluded that there wasn't grounds for a Franks hearing, and that based on the fact... So why do you think the two stems are enough to search the house, or do you think you need more than that? Well, in this case, there is more, but I believe that if you look at the cases even that this court has cited, in fact, counsel provided the court a 28-J letter citing the Juneau case, and in that case, a corner tear with residue on it was enough. So if you have stems, you have residue, you have things like that that are coming directly out of someone's home, I think that establishes probable cause. But in this case, we have more than just... What else do you have? Well, we have information that the defendant, Mr. March, is storing guns for a drug trafficker named Edwin Goodwin. And Edwin Goodwin was arrested, or his home was searched, and marijuana was found along with crack cocaine, ecstasy, and cocaine. So as you know, the officer, Sergeant Hill, had information that Mr. Goodwin should have firearms, but when he searched these multiple residences, he didn't find any firearms. So he's still investigating Mr. Goodwin, and now he gets information that the reason Mr.... What did he say about that again? About the storage evidence? What did he know? The person knew, A, that... Who told him this? Well, a fellow officer, I believe... He says, a fellow officer told me? Yes, and I know who it is, but I don't think that's relevant here. Well, it's not in the affidavit, and it's not in the hearings. That's right. The fellow officer told him that... What? He had information... From an unspecified source? Yeah, I believe you can infer that it's a citizen of some kind, or an informant, but that this fellow agent is saying, we have information that Mr. March is storing guns for his nephew, Edwin Goodwin. So the subject knew that Mr. March was the uncle of Mr. Goodwin. He identified the specific address where the guns were being stored, and he also specifically, I believe that you can infer from the affidavit that this same informant said that Mr. March is a marijuana user, and that's how it got put in the affidavit in support of the warrant. Now, Sergeant Hill didn't go get a warrant based on that information. He... Any timing put on that storage information? No, not that I know of. But we know that the search of Mr. Goodwin's residence was in May, and that this information was roughly eight weeks before the search of the residence, of Mr. March's residence. So assuming... The information that he was allegedly storing the guns was received eight weeks before the search? Yes. Within eight weeks is what I think the testimony was, but I don't think it was any more specific than that. Does that make it stale? I wouldn't have authorized a warrant based on that. But, and again, we need to be clear here. This was not a federal search warrant. This was a state search warrant, and it wasn't a magistrate judge that issued this warrant. It was an experienced Iowa court, district court judge, either associate or district court judge. And Judge Trom's affid warrants have been authorized and approved in other cases by the circuit. So in this case... I was really asking more about the evidence in the warrant, not the credentials of the judge. But I was just concerned whether the eight weeks makes the storage information... ...weak. I think it... Stale may not be the right word. Weaker because of the timing, certainly. And the trash pull was how long before the affidavit was submitted? Less than two days. Less than two days. So, and if you look at the addendum provided by Ms. Jansen, you can see there's a photograph of the residence. You can see it's a duplex, but there's really no doubt that the trash that was collected came from the back of Mr. March's house, and that there was a trash can at the back door of Mr. March's house the day before trash collection. And on the morning of, or at night, that trash can is on the street corner. And the trash can that he had seen at the back door is not there anymore. So we can reasonably infer from that... ...trash, as I understand it. Yes. And to show that Mr. March lived there, but I think the police already knew that's where he lived. No, but I mean that would connect March to the trash can. It certainly did. So in the government's view, even if there was such slim probable cause, we think that there is substantial basis for the issuance of the warrant or a finding of probable cause. And in this case, we have several layers of approval here before we come to the court today. And in this case, to say that the officer did not act in good faith reliance on the search warrant, I think, stretches credulity. The sergeant did everything we want a police officer to do, and that is go to a county attorney and have him review it, take it to a district judge and have the judge approve it. And then we know that after the fact, the magistrate judge found probable cause, as did the district court judge. So to say that Sergeant Hill's reliance on the warrant is not in good faith, I think, makes no sense, number one. Number two, in this particular case, the freshness of the information that there was marijuana in the house was less than two days. And even though the warrant was executed seven days later, I think that that all by itself establishes a reasonable period of time within which to execute the warrant. Before I yield the rest of my time, I want to thank the court for its time today. I am retiring in two weeks. This will be my last appearance before this court. My first appearance was in 1996 before Judge Fagg, Judge Wollman, and Judge Bright. And since then, I've appeared in front of this court many times. It's been my great honor and pleasure to serve. Thank you. Thank you, Mr. Kronk. Thank you for your service. Ms. Jansen? I believe I expired my... Okay. Thank you. Your Honors, Mr. Kronk said that Sergeant Hill did everything we want him to do. I disagree with that comment. He receives information about two things. Mr. March is story nephews for Mr. Goodwin. Mr. March is involved with marijuana usage. In the next eight weeks, what does Sergeant Hill do? He runs a background check and does a single trash pull. That's it. Nothing else. And then he doesn't bother to include any of the information about his investigation of Mr. Goodwin in his search warrant affidavit, despite having over a dozen years of extensive law enforcement experience. If the good faith exception accomplishes anything here, it is to tell an officer exactly like Sergeant Hill, this is not enough. In fact, I would point the court to the Lyles case from the Fourth Circuit just about five years ago. It's extraordinarily similar. In that case, the officer says, I've done some investigation. I think this house is connected to criminal activity. He does a trash pull, finds three stems that test positive for THC. And then he makes these summary allegations that we're going to find evidence of marijuana possession, which isn't even present here, and evidence of drug trafficking and money laundering inside. And the Fourth Circuit said, we are not applying the good faith exception to this. What we have here is a flimsy trash pull that produced scant evidence of a marginal offense. I question whether that's even an offense here. But that nonetheless served to justify an indiscriminate rummaging through a household. Law enforcement can do better. I would also point the point, that is the Lyles case from the Fourth Circuit. I would also point the court to Morales, an 11th Circuit case from 2021. In that case, the 11th Circuit actually did apply the good faith exception, but emphasized the extreme importance that the officer in that case had conducted two trash pulls. One pull could be a fluke, two perhaps a trend. And here, of course, we only had those two stems, unbagged loose trash in a single trash pull. We do ask you to find this was a bare bones affidavit, and the good faith exception does not apply. All right. Thank you, Ms. Johnson.